UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIA CHAVES and FRANCISCO )
MONTEIRO, )
    Plaintiffs, )
 )
 )
        v. )   C.A. No. 15-12359-MLW
 )
U.S. BANK, N.A. AS TRUSTEE )
and WELLS FARGO BANK, N.A., )
    Defendants. )

MEMORANDUM AND ORDER

WOLF, D.J.                            September 26, 2018

I.   INTRODUCTION

Plaintiffs Maria Chaves and Francisco Monteiro brought this case against the defendants U.S. Bank, N.A. as Trustee ("U.S. Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") challenging the defendants' foreclosure on their home in Marlborough, Massachusetts. Plaintiffs obtained a refinancing loan from Wells Fargo in September 2003.[1] See Joint Stip. of Facts (Docket No. 40) ¶2. In exchange for the loan, plaintiffs granted Wells Fargo a mortgage on their property. See id. ¶¶1, 3. Plaintiffs defaulted on the loan by failing to make required payments. See id. ¶5. U.S.

---

[1] The company that originated plaintiffs' loan was Wells Fargo Home Mortgage, Inc. The parties stipulated that Wells Fargo is the successor-in-interest to Wells Fargo Home Mortgage, Inc. See Joint Stip. of Facts (Docket No. 40) ¶2. Accordingly, this Memorandum and Order refers to both entities as "Wells Fargo."

Bank, as the mortgagee pursuant to an assignment executed in 2012, sold the property at a foreclosure sale on April 24, 2015. See id. ¶¶4, 6.[2] Plaintiffs filed this action in state court shortly after, on May 6, 2015, seeking primarily to unwind the sale. See id. ¶¶16-17. It was removed to this court on the basis of diversity jurisdiction on June 17, 2015.

The operative pleading, the First Amended Verified Complaint, asserted eight claims against defendants related to the origination, servicing, and foreclosure of their mortgage loan. See Docket No. 16 (Compl.). Plaintiffs were seeking, among other things, an injunction, declaratory relief voiding the foreclosure sale and awarding plaintiffs title to the property, and damages.[3] The court dismissed Counts I, II, III, V, and VI on September 27, 2017, and simultaneously denied without prejudice plaintiffs' request for leave to amend the complaint because they failed to

---

[2] There is no challenge to U.S. Bank's standing to conduct the foreclosure sale. The parties stipulated that U.S. Bank was the "mortgagee" entitled to foreclose. Joint Stip. of Facts ¶¶2, 6; see also Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1121 (Mass. 2012) (holding that for foreclosures conducted pursuant to the power of sale, where statutory notice of the sale was provided after the date of this decision, the foreclosing entity must hold the mortgage and also hold the note or be the agent of the noteholder).

[3] The First Amended Verified Complaint mislabeled Counts VI through VIII by restarting the numbering on these counts at "IV." Therefore, the court refers to the final three counts by their correct numbers, i.e., Counts VI, VII, and VIII.

submit a memorandum as required by Local Rule 7.1(b)(1) for the District of Massachusetts. See Docket No. 32 (Sept. 27, 2017 Order) at 19. Plaintiffs subsequently withdrew Count VIII, see Joint Stip. of Facts ¶22, and did not renew their request for leave to amend. Therefore, only Counts IV and VII remain.

Count IV claims defendants violated M.G.L. Chapter 244 §35A, the terms of the mortgage contract, and M.G.L. Chapter 93A because they allegedly failed to provide plaintiffs with notice of their right to cure their default before foreclosing. Therefore, according to plaintiffs, the foreclosure sale is void. Count VII claims defendants violated M.G.L. Chapter 244 §14, which establishes the notice requirements for conducting a foreclosure by power of sale, because defendants did not properly announce postponements of the foreclosure sale. Plaintiffs contend the foreclosure sale is, therefore, void for this separate reason.

Defendants have filed a Motion for Summary Judgment on both remaining counts (the "Motion"), which plaintiffs oppose. For the reasons explained in this Memorandum, the Motion is being allowed.

II. ANALYSIS

The court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit" in light of the relevant substantive law. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A dispute concerning a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248; see also Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009).

To obtain summary judgment, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The movant can discharge its burden by "affirmatively demonstrat[ing]" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325, 331-32. Once the movant does so, the nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 250; see Celotex, 477 U.S. at 322 & n.3. The court must view the record "in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (quotations omitted). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id.

A. Failure to Provide Notice of Right to Cure and Derivative 93A Claim (Count IV)

Plaintiffs claim the foreclosure sale is void because the defendants failed to provide them with notice of their right to cure the default, as required by Chapter 244 §35A and paragraph 22 of the mortgage contract. Furthermore, plaintiffs allege that this failure to provide proper notice was an unfair and deceptive business practice that violated Chapter 93A.

The version of §35A in effect in May 2010 - which governs because that is the date of the notice at issue - gave mortgagors a 90-day right to cure a default before the full balance of their mortgage note could be accelerated. See M.G.L. c. 244 §35A(a) (eff. May 1, 2008). It provided that the mortgagee cannot accelerate the unpaid balance "or otherwise enforce the mortgage because of a default" until at least 90 days after providing written notice to the mortgagor. Id. §35A(b). The written notice had to contain certain information, including the identity of the mortgagee, the nature of the default, a statement that the mortgagor has a right to cure, and the deadline for curing the default. See id. §35A(c). Such notice is "deemed . . . delivered to the mortgagor . . . when mailed to the mortgagor at the mortgagor's address last known to the mortgagee." Id. §35A(b).

However, as a threshold matter, violations of §35A cannot, alone, void a foreclosure sale. In Flores v. OneWest Bank, F.S.B.,

5

the First Circuit affirmed dismissal of the plaintiff's claim that a foreclosure sale was void "because it was carried out in violation of … §35A." 886 F.3d 160, 164-65 (1st Cir. 2018). The court explained that "[t]he claim that the sale is void because it was carried out in violation of §35A fails because the [Massachusetts Supreme Judicial Court ('SJC')] held in Schumacher that an alleged violation of that statute does not void a foreclosure sale." Id. (citing U.S. Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 890 (Mass. 2014) (holding that violations of the notice provisions in §35A cannot void a foreclosure sale because the statute relates to "preforeclosure" proceedings)); see also Fed. Nat. Mortg. Ass'n v. Carvalho, 29 N.E.3d 212, 212 (Mass. App. Ct. 2015) ("Failure to comply with §35A is insufficient to void a foreclosure unless a mortgagor can show that the noncompliance led to fundamental unfairness in the entire foreclosure process."). Therefore, the plaintiffs in this case cannot void the foreclosure sale by relying on alleged violations of §35A, without more.

Plaintiffs also rely on paragraph 22 of their mortgage contract. Paragraph 22 of the plaintiffs' mortgage states that before accelerating the loan and invoking the statutory power of sale, the lender must give the borrowers notice of the default and their right to cure, in a manner substantially similar to that required by §35A. See Defs. Mem. in Support of Mot. to Dismiss, Ex. A (Docket No. 20-1) ¶22 (Mortgage). However, in Flores, the

6

First Circuit held that the plaintiff's claim that the sale was void "because it was carried out in violation of paragraph twenty-two of the mortgage instrument," which required the mortgagee to provide notice of the default and right to cure, failed for the same reason as the §35A claim. 886 F.3d at 165. Even though the SJC has voided a foreclosure sale because the mortgagee did not strictly comply with the same contractual notice provision, the decision was expressly given "prospective effect only." Pinti v. Emigrant Mortgage Co., 33 N.E.3d 1213, 1226-27 (Mass. 2015). As the foreclosure sale in Flores occurred before the SJC decided Pinti in July 2015, the First Circuit affirmed dismissal of the plaintiff's claim that the foreclosure sale was void for violating the contractual notice provision. See Flores, 886 F.3d at 165 (citing Pinti, 33 N.E.3d at 1226-27). Therefore, plaintiffs' claim that the April 2015 foreclosure sale is void for violating the notice requirement in paragraph 22 of their mortgage is not meritorious because the sale was conducted before Pinti was decided. See id.

In any event, based on the evidence in the record, no genuine dispute exists concerning defendants' compliance with the notice requirements of either §35A or paragraph 22 of the mortgage. Plaintiffs defaulted on their loan and defendants subsequently foreclosed on the mortgage by auctioning their property on April 24, 2015. See Joint Stip. of Facts ¶¶5-6. Defendants have submitted

a letter dated May 16, 2010, addressed to Frank Monteiro at his mortgaged property from Wells Fargo, that appears to be a right to cure notice pursuant to §35A. See Smith Aff., Ex. B ("Right to Cure Notice"). It states, among other things, that: Monteiro's loan is in default; he has the right to cure the default by August 14, 2010; and if he fails to do so, Wells Fargo may accelerate his loan and foreclose on the mortgage. See id. In addition, Wells Fargo's Vice President of Loan Documentation, Shae Smith, attested that: "On or about[] May 16, 2010, Wells Fargo mailed to Plaintiffs a notice to cure by regular mail through the United States Postal Service, as required by G.L. c. 244, §35A." Smith Aff. ¶8.

Plaintiffs do not dispute that the May 2010 Right to Cure Notice, if delivered, would otherwise satisfy the notice requirements of §35A and the mortgage. Rather, plaintiffs' contend that the Right to Cure Notice was never sent to them. See Pltfs. Resp. to Def. Statement of Facts (Docket No. 52, Ex. A) ¶6. However, viewing the evidence in the light most favorable to plaintiffs, they have failed to raise a genuine dispute concerning whether the Right to Cure Notice was ever "delivered." M.G.L. c. 244 §35A(b). Plaintiffs stipulated that their "only proof that Defendants failed to send notice under G.L. c. 244, §35A is their own testimony that they did not receive notice." Joint Stip. of Facts ¶26 (emphasis added). They state that: "Defendants never sent us any notice under G.L. c. 244, §35A on or about May 16,

[2010] providing the amount due to cure the default and outlining the consequences of failure to cure the default. We know that is the case as we never _received_ them." Pltfs. Aff. (Docket No. 52, Ex. B) ¶8 (emphasis added).[4]

However, viewing the evidence in the light most favorable to plaintiffs, this testimony is insufficient to raise a dispute of material fact. In Biltcliffe v. CitiMortgage, Inc., Judge Dennis Saylor held that "plaintiff's sworn statement that he never received the [notice of default] letters did not create an issue of material fact, because the law did not require proof of receipt, only of mailing." 952 F. Supp. 2d 371, 383 (D. Mass. 2013) (citing 2007 Mass. Ch. 206, §11, H.B. 4387 (enacting Chapter 244 §35A)). The First Circuit affirmed Judge Saylor's decision and endorsed this particular holding in dictum. See Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 931 n.3 (1st Cir. 2014). Therefore, this court concludes that, as Judge Saylor wrote, "it is sufficient for defendant[s] to prove that the letters were mailed; [they] need

--------

[4] Plaintiffs appear to have made a typographical error in their affidavit where they state that defendants never sent, and plaintiffs never received, a §35A notice in May 2016. See Pltfs. Aff. ¶8. That would have been after the foreclosure sale in April 2015, and after plaintiffs filed this lawsuit in May 2015. Presumably plaintiffs meant to assert they never received the May 2010 §35A notice, which has been produced and discussed in this litigation. See Smith Aff. (Docket No. 49-1) ¶8 & Ex. B (Right to Cure Notice dated May 16, 2010). There is no indication that there is a second, subsequent §35A notice at issue.

not prove that they were delivered." <u>Biltcliffe</u>, 952 F. Supp. 2d at 379-80. Similarly, in this case, defendants' evidence that the Right to Cure Notice was mailed to the plaintiffs in May 2010 is not put in genuine dispute by plaintiffs' sworn assertion that they did not receive it. See <u>id.</u> at 383; see also <u>Leonard v. PNC Bank, NA</u>, 2014 WL 1117990, at *13 (D. Mass. 2014) (Gorton, J.) (granting summary judgment for defendant on plaintiff's §35A claim, where plaintiff had "no memory of receiving a default notice and no record of receipt in his files," because defendant's employees stated that it sent the notice).

Therefore, there is no genuine dispute concerning whether defendants mailed the May 2010 Right to Cure Notice before conducting the foreclosure sale. As a result, no reasonable factfinder could conclude that they failed to comply with §35A and paragraph 22 of the mortgage.

In addition, defendants are entitled to summary judgment on plaintiffs' Chapter 93A claim.[5] It is based solely on the allegation that defendants failed to provide proper notice pursuant to §35A and the mortgage, and that "[f]ailure to send such notice is unfair and deceptive." Compl. ¶92. Such derivative

---

[5] Plaintiffs do not mention their 93A claim or argue that it should survive in their Opposition to defendant's Motion. See <u>generally</u> Opp. (Docket No. 52).

Chapter 93A claims cannot stand alone when the defendant is granted judgment on the underlying substantive claim. See, e.g., Galvin v. U.S. Bank Nat'l Ass'n, 2015 WL 8664207, at *2 (D. Mass. 2015) (Stearns, J.) (granting summary judgment for defendant on Chapter 93A claim because it was "derivative" of the meritless trespass claim), aff'd, 852 F.3d 146, 165-66 (1st Cir. 2017); Park Drive Towing, Inc. v. City Of Revere, 809 N.E.2d 1045, 1050 (Mass. 2004) (affirming summary judgment for defendant on "derivative" Chapter 93A claim based on alleged "unfair and deceptive conduct surrounding the breach of contract," because the court found no contract existed); Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 247 (Mass. App. Ct. 2004) (holding that plaintiff's 93A claim was "wholly derivative of the tortious interference claim"; therefore, "the evidence being insufficient to establish" tortious interference, "it is likewise insufficient to establish an unfair method of competition or an unfair or deceptive act or practice"). Because plaintiffs' 93A claim is based on their unmeritorious claim that defendants failed to provide them notice of their default and right to cure as required by §35A and the mortgage contract, the 93A claim must fail as well.

Therefore, defendants are entitled to summary judgment on Count IV.

B. Failure to Provide Notice of Foreclosure Sale (Count VII)

Plaintiffs claim the foreclosure sale is void for the separate reason that defendants failed to provide proper notice of foreclosure sale pursuant to M.G.L. Chapter 244 §14. More specifically, plaintiffs contend the defendants did not properly announce postponements of the foreclosure sale.

If a mortgagee has provided the required notices of default, and the mortgagor has failed to cure the default, the mortgagee is authorized to foreclose pursuant to the statutory power of sale found in M.G.L. Chapter 183 §21. A foreclosure sale conducted pursuant to the power of sale "must comply with all applicable statutory provisions, including in particular G.L. c. 183, §21, and G.L. c. 244, §14." Eaton, 969 N.E.2d at 1121. Chapter 183 §21 provides that the mortgagee may sell the property at public auction if it complies with the statutory and contractual notice requirements for the sale. See id. Chapter 244 §14 creates various requirements for providing notice to the mortgagors and the public of the foreclosure sale, which may also be incorporated into the mortgage contract. More specifically, §14 requires the mortgagee to publish notice of the sale in a local newspaper three times, "once in each of 3 successive weeks," the first of which must be published "not less than 21 days before the sale." M.G.L. c. 244 §14 (eff. Nov. 1, 2012). In addition, notice of the sale must be

"sent by registered mail" to the mortgagor at least 14 days prior to the day of the sale. Id.

In addition, after the foreclosure sale, the mortgagee must record with the registry of deeds a copy of the notice of sale that it published, as well as an affidavit concerning the sale. See M.G.L. c. 244 §15 (eff. Jan. 11, 1995). If the recorded affidavit "shows that the requirements of the power of sale and of the statute have in all respects been complied with," the affidavit serves as admissible evidence "that the power of sale was duly executed." Id.

Defendants argue they are entitled to summary judgment on plaintiffs' Count VII because their recorded affidavit of sale establishes a prima facie case that they have complied with the statutory requirements for conducting a foreclosure by power of sale, including the notice requirements of §14, and that plaintiffs have failed to rebut this evidence. Defendants are correct that a mortgagee "may make a prima facie showing of its right to possession by producing an attested copy of the recorded foreclosure deed and affidavit of sale." Fed. Nat. Mortg. Ass'n v. Hendricks, 977 N.E.2d 552, 555 (Mass. 2012). A recorded affidavit of sale that is in the form provided by M.G.L. Chapter 183, Appendix Form 12, or that otherwise complies with the more particularized affidavit requirements of §15, serves "as prima

facie evidence of compliance with [the notice requirements of] §14." Id. at 555-58.

The recorded affidavit of sale "is not conclusive proof of compliance with . . . §14," however. Id. at 558-59. Once the mortgagee presents a prima facie case that it complied with §14 before foreclosing, it is "incumbent" on the mortgagor to "counter with his own affidavit or acceptable alternative demonstrating at least the existence of a genuine issue of material fact to avoid summary judgment against him." Id. at 559. Accordingly, in Hendricks, the SJC held that the mortgagee Fannie Mae was entitled to summary judgment because it submitted an affidavit of sale in the statutory form, demonstrating prima facie compliance with §14, and the plaintiff "did not controvert Fannie Mae's showing with his own affidavit or some acceptable alternative." Id.

Here, the defendants have produced a recorded affidavit of sale that is in the statutory form. Compare M.G.L. c. 183, App'x Form 12, with Defs. Mem. in Support of Mot. to Dismiss, Ex. C (Docket No. 20-3) at 3 ("Affidavit of Sale"). The parties stipulated that U.S. Bank recorded this Affidavit of Sale on October 20, 2015, which "recited the actions it undertook in conducting the [April 24, 2015] foreclosure." Joint Stip. of Facts ¶¶6-8. The Affidavit of Sale states, among other things, that plaintiffs' mortgage was in default; that U.S. Bank published a notice of sale in the MetroWest Daily News on January 12, 19, and

26, 2015; and that U.S. Bank "complied with Chapter 244, Section 14 . . . as amended, by mailing the required notices by certified mail." Affidavit of Sale; see Joint Stip. of Facts ¶¶9-11. The notice of sale attached to the Affidavit of Sale states that the auction would be held February 2, 2015 on the property, although, as explained below, it was postponed several times. See Defs. Mem. in Support of Mot. to Dismiss, Ex. C (Docket No. 20-3) at 4 ("Notice of Sale"); Joint Stip. of Facts ¶11.

Therefore, by submitting an Affidavit of Sale in the statutory form defendants have demonstrated prima facie compliance with the §14 notice requirements. See Hendricks, 977 N.E.2d at 559. To prevent summary judgment from being entered against them, plaintiffs must produce evidence demonstrating a genuine dispute of material fact concerning defendants' compliance with §14. See id. Plaintiffs have failed to do so.

As noted earlier, the Affidavit of Sale states that the defendants published the Notice of Sale in the MetroWest Daily News on January 12, 19, and 26, 2015, and mailed notice of the sale to the plaintiffs by certified mail. See Joint Stip. of Facts ¶¶9-10. These are acts which would satisfy §14. Plaintiffs now claim that they "dispute[]" that U.S. Bank published the Notice of Sale and mailed notice to them. Resp. to Defs. Statement of Facts

¶¶7-8. However, they cite no evidence to support their assertions.[6] Moreover, after reviewing the record, the court concludes that no reasonable factfinder could conclude that defendants failed to comply with the §14 notice requirements.

Plaintiffs stated in their First Amended Verified Complaint, which they incorporated into their joint affidavit, that "[n]otice of the purported foreclosure sale was published in the Metrowest Daily News on January 12, 2015, January 19, 2015 and January 26, 2015." Compl. ¶39; Pltfs. Aff. ¶1. They subsequently testified that: "We believe that Defendants are truthful when stating that they published on January 12, 2015, January 19, 2015 and January 26, 2015 notice of its foreclosure sale scheduled for February 2, 2015, in the MetroWest Daily News. However, we never saw the publication." Pltfs. Aff. ¶10; see also id. ¶14 (acknowledging

---

[6] Plaintiffs cite no evidence in support of any of their assertions, in their Response to defendants' Statement of Material Facts, that certain facts are "disputed." See generally Resp. to Defs. Statement of Facts (Docket No. 52, Ex. A). Therefore, the material assertions in defendants' Statement of Facts (Docket No. 51) may be deemed admitted pursuant to Rule 56.1 of the Local Rules of the District of Massachusetts. Rule 56.1 states that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties," which "shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." L.R. 56.1 (emphasis added).

"the notice of sale that was published in the MetroWest Daily News"). In addition, plaintiffs state that "[d]efendants never sent us or mailed notices of the foreclosure sale by certified mail, return receipt requested. We know that is the case as we never received them." Id. ¶9.

However, there is no requirement that plaintiffs must have seen the published notices in order for the defendants to have complied with §14. See Hull v. Attleboro Sav. Bank, 596 N.E.2d 358, 362 (Mass. App. Ct. 1992). Moreover, "the fourteen-day registered mail notice requirement is satisfied by mailing and nonreceipt is irrelevant." Id. (emphasis added). "The main purpose" of both the newspaper publication and mailing requirements "is to provide notice to those affected by the foreclosure sale and to facilitate proof of notice." Id. The Massachusetts Appeals Court held in Hull that these purposes "were fully achieved" when the plaintiff "had actual notice of the sale at least seven days before the scheduled [sale] date." Id.

In this case, the undisputed evidence shows that plaintiffs had actual notice of the impending February 2, 2015 sale at least a month earlier. They attested in their First Amended Verified Complaint that U.S. Bank sent them a letter dated January 2, 2015, "threaten[ing] to foreclose upon the Property on February 2, 2015." Compl. ¶36; Pltfs. Aff. ¶1. Plaintiffs also alleged under oath that after plaintiffs contacted the defendants "in an effort to

negotiate the matter," defendants "agreed to postpone the foreclosure scheduled for February 2, 2015 in order to consider the Homeowners['] application for a loan modification." Compl. ¶¶38, 40. Therefore, plaintiffs have admitted that they were aware a month before of the sale scheduled for February 2, 2015, which is sufficient to demonstrate compliance with §14's notice requirements. See Hull, 596 N.E.2d at 362.

Having attested in their First Amended Verified Complaint that the notices were published and that they knew about the February 2, 2015 sale, plaintiffs cannot now "manufacture a dispute of fact by contradicting . . . earlier sworn testimony." Abreu-Guzman v. Ford, 241 F.3d 69, 74 (1st Cir. 2001). Moreover, even if they did not see the publications or do not recall receiving notice in the mail, such facts are "irrelevant," particularly where plaintiffs had actual notice of the impending February 2, 2015 sale. Hull, 596 N.E.2d at 362. Therefore, no reasonable factfinder could conclude that plaintiffs have rebutted the defendants' prima facie evidence of compliance with both the publication and mailing requirements of §14 before the initial auction scheduled for February 2, 2015.

Nevertheless, plaintiffs contend that there is a genuine dispute concerning defendants' compliance with §14 because the foreclosure sale was postponed several times, and according to plaintiffs, the defendants did not properly announce the

postponements. Plaintiffs concede, however, that defendants were not required to re-publish and re-send them notices of the postponements in order to comply with §14. See Opp. (Docket No. 52) at 9. In Fitzgerald v. First National Bank of Boston, the mortgagors argued that the mortgagee failed to comply with statutory requirements for conducting a foreclosure by power of sale, including §14 notice requirements, because it postponed the sale by public announcement at the action site, and did not provide additional written notice and publication. See 703 N.E.2d 1192, 1194 (Mass. App. Ct. 1999). The Massachusetts Appeals Court rejected this argument, explaining that:

> It has long been accepted practice in Massachusetts that, while details of the initial auction must be provided by written notice to the appropriate parties and published in a newspaper . . . a postponement of the sale may be announced by public proclamation to those present at the auction site, particularly when the adjournment is requested by the mortgagor. . . . It was appropriate in this case for the bank to continue the sale by public proclamation at the time and place of the scheduled auction, where that auction was properly noticed and advertised in the first instance . . . and where the postponement was made to accommodate the mortgagors. Apart from the statutory requisites, to which the mortgagee must strictly adhere, questions regarding notice of foreclosure proceedings will continue to be viewed according to the criteria set forth in our cases, rather than under any hard and fast rule, in light of the mortgagee's general obligations of good faith, diligence, and fairness in the disposition of the mortgaged property.

Id. at 1194-95 (emphasis added). Therefore, if the defendants did not publish or mail notice of any the postponements, any such

failures would be immaterial because they were not required to do so to comply with §14.

Plaintiffs argue, instead, that there is a genuine dispute concerning whether defendants actually postponed the sale by "public proclamation." Public proclamation is a permissible way to provide notice of a postponement after §14 has been satisfied with respect to the "initial auction." Fitzgerald, 703 N.E.2d at 1194-95. This is "particularly" true where, as here, the postponement was at the request of the mortgagors to allow plaintiffs to submit an application for a loan modification, which they state they completed on April 9, 2015. See id.; Compl. ¶¶40, 45.

Defendants submitted the following evidence to prove that they publicly announced the postponements. The Affidavit of Sale states that the auction, originally scheduled for February 2, 2015, was "postponed by public proclamation" several times. See Affidavit of Sale. It also states that "at the time and place therein appointed" in the published notice, meaning on February 2, 2015, the sale was postponed to February 9, 2015; on February 9, 2015, it was postponed to March 12, 2015; and on March 12, 2015, it was postponed to April 24, 2015. See id.; Joint Stip. of Facts ¶¶13-14. Defendants also submitted an affidavit of Theresa Gravlin, Auction Director of Towne Auctions ("Towne"), stating that Towne publicly announced the postponements at the property,

which corroborates the Affidavit of Sale. See Gravlin Aff. (Docket No. 49-2) ¶¶5-8.

Plaintiffs counter this evidence with testimony that the defendants "did not . . . postpone the sale by public proclamation" on any of those dates because they "did not see anyone engaging in such action." Pltfs. Aff. ¶¶11-13; see Joint Stip. ¶¶28-29 (stipulating plaintiffs have no other evidence that defendants failed to publicly postpone the foreclosure sale). However, plaintiffs' affidavit does not create a genuine dispute of material fact because a party cannot "manufacture a dispute of fact by contradicting . . . earlier sworn testimony." Abreu-Guzman, 241 F.3d at 74. In their First Amended Verified Complaint, plaintiffs previously attested that the February 2, 2015 sale was postponed, and also that there was a public postponement on at least February 9, 2015. See Compl. ¶¶40-41. Therefore, the affidavit plaintiffs filed in support of their opposition to the Motion for Summary Judgment is insufficient to create a genuine dispute concerning whether the postponements were publicly announced.

Moreover, even accepting as true the assertions in the plaintiffs' affidavit, a possible dispute concerning whether defendants failed to publicly proclaim the postponements would not constitute a violation of §14 and, therefore, is not material. While defendants must "strictly adhere" to the publication and mailing requirements of §14, after the statutorily required

notices are provided, questions concerning the mortgagee's subsequent conduct during foreclosure proceedings are viewed "in light of the mortgagee's general obligations of good faith, diligence, and fairness." Fitzgerald, 703 N.E.2d at 1195. The Massachusetts Appeals Court explained in Pemstein v. Stimpson that:

> [i]f the statutory norms found in G.L. c. 244, §§11-17B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying the fiduciary duty of a mortgagee to deal fairly with the mortgaged property, unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process.

630 N.E.2d 608, 611 (Mass. App. Ct. 1994) (citing cases in which mortgagees violated their obligations by demonstrating "bad faith or failure of diligence . . . of an active and conspicuous character"). Therefore, although public proclamation is a permissible way to postpone a sale, it is not required. See Stephens-Martin v. Bank of N.Y. Mellon Tr. Co., 2015 WL 732087, at *12 (Mass. Land Ct. 2015) (finding at trial that public proclamation was made, but noting that "there is not even any hard and fast requirement for a public proclamation to have been made," and the burden is on plaintiffs to prove mortgagor acted in commercially unreasonable manner in postponing the sale). Thus, failure to publicly proclaim a postponement does not necessarily

violate a mortgagee's obligations to deal fairly with the mortgagors in the foreclosure process. See id.

Here, plaintiffs only assert in a conclusory manner that defendants "did not act diligently and in good faith with us when performing the foreclosure sale by failing to use due diligence and follow the required statute." Pltfs. Aff. ¶15. This assertion of bad faith and lack of diligence based solely on statutory noncompliance is negated by the fact that defendants did comply with §14, as explained earlier. See Pemstein, 630 N.E.2d at 611. Defendants' compliance with §14 was complete when it published three times and mailed the notices of February 2, 2015 sale. See M.G.L. c. 244 §14. There is no additional evidence of bad faith conduct or lack of diligence concerning the foreclosure process. In any event, even if a factfinder could conclude that defendants failed to exercise reasonable diligence or exhibited bad faith with respect to the postponements, such conduct would not violate §14 because, as explained earlier, §14 does not govern postponements. See Fitzgerald, 703 N.E.2d at 1194-95; Stephens-Martin, 2015 WL 732087, at *11 (holding that although mortgagees must "strictly adhere to . . . §14, with regard to publishing for

three consecutive weeks and notice to the mortgagee by registered mail," there is no statute addressing postponements).[7]

Therefore, plaintiffs have failed to raise a genuine dispute of material fact concerning whether defendants complied with Chapter 244 §14 before conducting the foreclosure sale of their property on April 24, 2015. Defendants' Affidavit of Sale in the statutory form provides prima facie proof of compliance with the publication and mailing requirements of §14, and plaintiffs have failed to introduce evidence sufficient to make this issue triable. Because no reasonable factfinder could conclude defendants violated §14, defendants are entitled to summary judgment on Count VII.

---

[7] Plaintiffs' First Amended Verified Complaint included a claim for "improper foreclosure [and] breach of [the] duty of good faith" (Count VI), based on defendants' alleged failure to properly consider their application for a loan modification. Compl. ¶¶101-07. This claim was dismissed. Plaintiffs have not asserted a claim that the foreclosure sale is void because defendants acted unreasonably or in bad faith when postponing the sale. They only assert that the foreclosure sale is void because defendants violated §14 by allegedly not publicly proclaiming the postponements (Count VII). See id. ¶¶110-16.

## III. ORDER

For the foregoing reasons, it is hereby ORDERED that defendants' Motion for Summary Judgment (Docket No. 49) is ALLOWED. Judgment shall enter for the defendants.

UNITED STATES DISTRICT JUDGE